# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

**EMERALD COAST UTILITIES AUTHORITY,**

**Plaintiff,**

**v.**

CASE NO.: 3:09cv361\NCR\MD

**3M COMPANY, E.I. DUPONT DE NEMOURS AND COMPANY, SOLUTIA, INC., AND FIRE RAM INTERNATIONAL, INC.,**

**Defendants.**

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1331, 1332, and 1446,

Defendant 3M Company ("3M") hereby gives Notice of Removal of the above-

captioned action, No. 2009 CA 002177, pending in the Circuit Court of the First

Judicial Circuit, in and for Escambia County, Florida, to the United States District

Court for the Northern District of Florida. In support of removal 3M states as

follows:

CLERK
DIST CT.
NORTHERN DIST. FLA.
PENSACOLA, FLA.

09 AUG 21 PH 2: 26

FILED

FLN30000339|

## Background

1.

On July 8, 2009, Plaintiff Emerald Coast Utilities Authority ("ECUA") filed a Complaint and Demand for Jury Trial ("Complaint") in Florida state court against Defendants, 3M Company ("3M"), a Delaware corporation, E.I. Dupont de Nemours and Company ("DuPont"), a Delaware corporation, and Solutia, Incorporated ("Solutia"), a Missouri corporation. Plaintiff also purports to sue Fire Ram International, Inc. ("Fire Ram"), a now-defunct business once run out of the Miami-area home of its now-deceased husband-and-wife owners.

2.

Plaintiff served 3M with the Complaint on July 24, 2009. Pursuant to 28 U.S.C. § 1446(a), copies of all process and pleadings that have been served upon the Removing Defendant are attached hereto as Exhibit A to this Notice of Removal.

3.

Defendant E.I. DuPont de Nemours and Company was first served on July 24, 2009, with a subsequent service to correct deficiencies accomplished on July 29, 2009. Defendant Solutia, Inc. was served on July 24, 2009.

4.

Fire Ram has not and cannot be served with process because its former registered agent for service of process has been dead for more than a year, and the

corporation is due to be dissolved by law in a matter of weeks. (Ex. B, Declaration of Christopher Benson ("Benson Dec."), ¶¶ 7,12.)

5.

The Complaint alleges that 3M manufactured Aqueous Film-Forming Foam or AFFF, a product used to extinguish fires, and that AFFF was "used, released, discharged, and/or disposed of in the vicinity of certain drinking water production wells owned and/or operated by Plaintiff." (Compl. ¶ 5.) Solutia is alleged to have "manufactured and sold" various "non-stick products" that, like AFFF, were purportedly "used, released, discharged, and/or disposed of in the vicinity of Plaintiff's wells." (*Id.* ¶ 6.) DuPont is alleged to have both "produced, distributed, marketed, and/or sold AFFF that was used, released, discharged, and/or disposed of near Plaintiff's wells" and "manufactured and sold" various "non-stick products" that, like AFFF, were purportedly "used, released, discharged, and/or disposed of in the vicinity of Plaintiff's wells." (*Id.*) The Complaint further alleges that AFFF and Non-Stick Products are "made with chemicals that synthesize and/or degrade into PFOA and/or PFOS." (*Id.* ¶¶ 5-6.)

6.

It is impossible to tell from the allegations in the Complaint the basis for Plaintiff's alleged claim against Fire Ram. Plaintiff's allegations against Fire Ram lack even the most rudimentary facts about what it is the company supposedly did, and appear to be intentionally vague and ambiguous. Fire Ram is alleged only to

3

have "produced, distributed, marketed, *and/or* sold AFFF that was used, released, discharged, *and/or* disposed of near Plaintiff's wells" by unknown persons at unknown points in time. (*Id.* ¶ 6 (emphasis added).) That is as specific as it gets. The Complaint does not identify a single alleged transaction in which Fire Ram supposedly "produced, distributed, marketed, *and/or* sold" a single, identifiable AFFF-containing product to an identifiable customer in Escambia County, much less one who then did something to cause the AFFF-containing product to be "used, released, discharged, *and/or* disposed of near Plaintiff's wells." Nor is there any allegation that Fire Ram was somehow connected to AFFF "uses, releases, discharges *and/or* disposals" that resulted in detectable levels of PFOA and PFOS in Plaintiff's wells.

7.

The allegations regarding the "injuries" allegedly suffered by Plaintiff ECUA are similarly vague, as the Complaint asserts only that "PFOA and PFOS have been detected in varying amounts at varying times in water extracted from Plaintiff's wells." (*Id.* ¶ 41.) The Complaint does not identify the location of Plaintiff's wells, the dates of any testing, or the results of any testing, nor the origin of the alleged presence of PFOA or PFOS in ECUA wells. Despite lacking any meaningful detail, the Complaint purports to assert claims against all four putative defendants based on product liability, public and private nuisance, trespass, negligence and negligence *per se*.

4

8.

As set forth below, removal to this Court is proper on two independent grounds.

First, this Court has diversity jurisdiction. Fire Ram, a Florida corporation, has been improperly joined in this case. The putative claim against Fire Ram does not arise out of the same alleged transaction or occurrence as the claim against any of the out-of-state defendants, and thus there is no alleged basis for joint and several liability, resulting in fraudulent misjoinder. *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *overruled on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). In addition, Plaintiff has not stated a claim against Fire Ram, nor can it do so, resulting in fraudulent joinder. *See Cabalceta v. Standard Fruit Co.*, 883F.2d 1553, 1561 (11th Cir. 1989). Therefore, complete diversity exists between the remaining parties. The amount in controversy also exceeds $75,000. (Compl. ¶¶ 9, 83; Ex. C, Declaration of Gary Hohenstein ("Hohenstein Dec.").) Accordingly, both requirements for diversity jurisdiction have been met. *See* 28 U.S.C. § 1332.

Second, this Court has jurisdiction pursuant to the federal officer removal statute, which provides for removal of claims brought against any person acting under an officer of the United States. *See* 28 U.S.C. § 1442(a)(1). Removal is proper under the federal officer statute where a defendant shows (1) a colorable defense arising from federal law; and (2) there is a causal connection between actions taken under the color of office and the claim at issue. *Magnin v. Teledyne Continental Motors,* 91 F.3d 1424, 1427 (11th Cir. 1996) (citations omitted). Both requirements are easily

5

met here, as 3M designed and sold military specification AFFF to the United States

Navy for use on the Pensacola Naval Air Station and other Naval installations in

Escambia County. (Ex. E, Declaration of Michael A. Santoro ("Santoro Dec."); Ex.

D, Declaration of Stephen H. Phillips ("Phillips Dec.").)

## **The Procedural Requirements For Removal Have Been Met**

9.

This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b) in that it

is being filed within thirty (30) days of July 24, 2009, the date on which 3M received

a copy of the Complaint.

10.

Pursuant to 28 U.S.C. § 1441(a), the removal of this action to this Court is

proper as this Court sits in the judicial district and division embracing the place where

the action is pending. *See* 28 U.S.C. § 89(a) (stating that the Northern District of

Florida embraces Escambia County). This case is properly docketed in the Pensacola

division upon removal because that is the division wherein lies the county from which

the action was removed. N.D. Fla. Loc. R. 3.1(B).

11.

Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being filed

with the Circuit Court of the First Judicial Circuit, in and for Escambia County,

Florida.

6

12.

By filing this Notice of Removal, the Removing Defendant does not waive any available defenses.

13.

This removal is filed with the consent of DuPont and Solutia. The consent of defendant Fire Ram is unnecessary because: (1) Fire Ram has not and cannot be served; (2) Fire Ram has been fraudulently joined; and (3) the consent of co-defendants is not required where, as here, the Court has jurisdiction over the matter under 28 U.S.C. § 1442(a)(1).

## DIVERSITY JURISDICTION

14.

This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332, because this is a civil action in which the amount in controversy exceeds $75,000, exclusive of costs and interest, and the action is between citizens of different states.

15.

For purposes of diversity, a corporation is considered to be a citizen of any state by which it has been incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1).

a.    3M Company. The Complaint alleges that 3M Company is a Delaware corporation with its principal place of business in St. Paul, Minnesota. (Compl. ¶ 11a.)

b.    DuPont. The Complaint alleges that DuPont is a Delaware corporation with its principal place of business in Wilmington, Delaware. (Compl. ¶ 11b.)

c.    Solutia. The Complaint alleges that Solutia is a Missouri corporation. (Compl. ¶ 11c.) On information and belief, the principal place of business for Solutia is St. Louis, Missouri.

d.    Fire Ram. The Complaint alleges that Fire Ram is a Florida corporation with its principal place of business in Sunny Isles Beach, Florida. (Compl. ¶ 11d.)

It is evident from the face of the Complaint that Plaintiff seeks to avoid federal jurisdiction. (*See* Compl. ¶ 14 (asserting that "[t]here is no diversity of citizenship in this action").) As set forth below, however, Fire Ram is not a proper defendant in this case and has been joined here solely in an improper attempt to defeat diversity jurisdiction. Thus, the diversity of citizenship in this action exists because:

a.    Plaintiff is a citizen of Florida (Compl. ¶ 1); and

b.    None of the non-fraudulently joined defendants - 3M Company, DuPont, and Solutia - are residents of Florida (Compl. ¶ 11a-c).

### Fraudulent Misjoinder of Fire Ram

16.

Fraudulent misjoinder occurs where a diverse defendant is joined with a non-diverse defendant as to whom (1) there is no joint, several, or alternative liability, and (2) the claim against the diverse defendant has no real connection to the claim against the non-diverse defendant. *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *overruled on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000).

17.

There are no factual allegations in the Complaint suggesting that there is any connection of any kind between whatever it is that Fire Ram supposedly did with AFFF products and Plaintiff's alleged claims against 3M, DuPont, or Solutia. Nor is there any allegation that Fire Ram manufactured AFFF or otherwise was responsible for some discernible share of the market for AFFF products. Accordingly, there is no alleged basis from which a claim of joint, several, or alternative liability could arise.

18.

Moreover, publicly-available records reveal that Fire Ram is anything but a legitimately- joined defendant. Fire Ram was a Miami-based small business that, at one point, was owned and operated by two shareholders, William and Dawn Schilling. In addition to Mr.. Schilling at the time of his death, on information and belief, Fire Ram had only a single employee. (Ex. B, Benson Dec ¶ 6.) On

9

information and belief, its estimated annual sales totaled only $100,000.  (*Id.*)

However, Mr. and Mrs. Schilling are both deceased and, on information and belief,

the company is no longer in business.  (*Id.* ¶ 7.)  The company will be dissolved by

operation of law by September 25, 2009.  (*Id.* ¶ 12.)  There is no indication in the

Complaint or in the public record that Fire Ram ever did any business of any kind in

Escambia County.  In short, Plaintiff has joined a defunct Miami-based "mom and

pop" shop that could not possibly have been involved in the alleged contamination of

Plaintiff's wells to a case targeting products manufactured by corporations like 3M,

DuPont, and Solutia.  The only conceivable reason for bringing such a patently futile

claim is to defeat federal jurisdiction.  This is textbook fraudulent misjoinder.

*Tapscott*, 77 F.3d at 1360 (11th Cir. 1996).

### Fraudulent Joinder

19.

A party is fraudulently joined if:  (1) there is no possibility plaintiff can

establish a cause of action against the resident defendant; or (2) there is outright fraud

in the plaintiff's pleading of jurisdictional facts.  *See Cabalceta v. Standard Fruit Co.*,

883 F.2d 1553, 1561 (11th Cir. 1989).  Plaintiff has not pleaded (and cannot plead) a

claim upon which relief can be granted against Fire Ram.  The joinder of Fire Ram is

therefore fraudulent.  *Cabalceta*, 883 F.2d at 1561.

20.

The Complaint is so lacking in factual allegations concerning Fire Ram and its

alleged misconduct that Plaintiff has not stated a claim of any kind against Fire Ram.

10

*See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940 (2009) ("While legal conclusions can provide the complaint's framework, they must be supported by factual allegations."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.")  Although the Complaint reaches 19 pages and 83 paragraphs, it sets forth only one "specific" (albeit vague and ambiguous) "factual" allegation regarding Fire Ram:  namely that Fire Ram allegedly "produced, distributed, marketed, ***and/or*** sold AFFF that was used, released, discharged, and/or disposed of near Plaintiff's Wells." (*See* Compl. ¶¶ 6, 18 (emphasis added).)

21.

The Complaint is completely silent as to <u>whether</u> Fire Ram allegedly "produced" **or** "distributed" **or** "sold" **or** merely "marketed" AFFF.

22.

The Complaint is completely silent as to <u>when</u> Fire Ram allegedly "produced" **or** "distributed" **or** "sold" **or** "merely" marketed AFFF.

23.

The Complaint is completely silent as <u>to whom</u> or <u>for whom</u> Fire Ram allegedly "produced" **or** "distributed" **or** "sold" **or** "merely" marketed AFFF.   And, of course, the Complaint says not one word about whether this unknown "customer" of Fire Ram did anything with an AFFF product that lead to detectable levels of PFOA or PFOS in Plaintiff's wells, or if so, what Fire Ram had to do with such activity.

24.

Instead, based on a single vague and ambiguous, wholly conclusory "factual" allegation with respect to Fire Ram individually, Plaintiff seeks to hold Fire Ram liable for seven causes of action: Strict Liability - Design Defect and/or Defective Product (Count I); Strict Liability - Failure to Warn (Count II); Public Nuisance (Count III); Private Nuisance (Count IV); Trespass (Count V); Negligence (Count VI); and Negligence Per Se (Count VII). This single factual allegation is insufficient to state a claim upon which relief can be granted against Fire Ram under any theory, much less the random collection of tort claims asserted in the complaint.

25.

Moreover, as shown above, the evidence in the public record reveals that a mom-and-pop shop like Fire Ram could not possibly be liable for the contamination of Plaintiff's wells. *See, e.g., Hunnings v. Texaco*, 29 F.3d 1480, 1486 (11th Cir. 1994); *City of Bloomington v. Westinghouse Elec. Corp.*, 891 F.2d 611, 615 (7th Cir. 1989); *Clay v. Wyeth*, Case No. 5:04-cv-192-Oc-10GRJ, 2004 U.S. Dist. LEXIS 28727 at *38-39 (M.D. Fla. Aug. 17, 2004); *Penelas v. Arms Technology, Inc.,* No. 99-1941 CA-06, 1999 WL 1204353 at *4 (Fla. Cir. Ct. Dec. 13, 1999), *aff'd,* 778 So.2d 1042 (3d D.C.A. Fla. 2001); *Siemens Energy & Automation v. Medina*, 719 So. 2d 312, 315 (Fla. Dist. Ct. App. 1998). Accordingly, the citizenship of Fire Ram -- as a fraudulently joined defendant -- should be disregarded for the purposes of determining diversity jurisdiction in this case.

## Amount in Controversy

26.

A removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement. *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001).

27.

Plaintiff is a public water provider with responsibility for the water and wastewater systems of both Escambia County and the City of Pensacola. (Compl. ¶ 10.) Thus, according to publicly-available information, Plaintiffs' drinking water system serves over 89,000 customers. (Ex. C, Hohenstein Dec., ¶ 7.) The Complaint alleges:

- That Plaintiff has filed this lawsuit "to recover compensatory and all other damages including, but not limited to, all necessary funds to compensate Plaintiff for the costs of designing, constructing, installing, operating, and maintaining the treatment facilities and equipment required to comply with federal safe drinking water advisories and to remove PFOA and PFOS from the drinking water it supplies to the public" (Compl. ¶ 9);

- that "[a]s a direct and proximate result [of Defendants' acts alleged in this Complaint], Plaintiff must assess, evaluate, investigate, monitor, remove, clean up, correct, and abate PFOA and/or PFOS contamination in its Wells at *significant expenses, loss and damage*" (*id.* ¶ 38 (emphasis added)); and

13

- that "[t]he detection and/or presence of PFOA and PFOS, and the threat of further detection and/or presence of PFOA and PFOS, in Plaintiff's Wells in varying amounts and at varying time has resulted, and will continue to result, in ***significant injuries and damages*** to Plaintiff" (*id.* ¶ 41 (emphasis added)).

Based on these allegations, Plaintiff asserts it is entitled to recover damages "including, but not limited to, all necessary funds to compensate Plaintiff for the costs of designing, constructing, installing, operating, and maintaining the treatment facilities and equipment required to comply with federal safe drinking water advisories and to remove PFOA and PFOS from the drinking water it supplies to the public." (*Id.* ¶ 9; *see also id.* ¶ 83.)

### 28.

The damages Plaintiff seeks are well in excess of $75,000. (*See* Ex. C, Hohenstein Dec. ¶¶ 5-6 (design and installation of the most cost-effective treatment to remove PFOA and PFOS from a public water supply with a flow rate many times *less than* that of ECUA cost over $2.5 million).)

## FEDERAL QUESTION

### 29.

This court has original jurisdiction of this case pursuant to the federal officer removal statute, 28 U.S.C. § 1442.

30.

The federal officer removal statute permits removal of actions commenced in a

State court against "The United States or any agency thereof or any officer (*or any*

*person acting under that officer*) of the United States or of any agency thereof, sued

in an official or individual capacity for any act under color of such office…" 28

U.S.C. § 1442(a)(1) (emphasis added).

31.

While federal courts typically construe removal jurisdiction narrowly, the

Supreme Court has made clear that the federal officer statute is to be construed

broadly. *See Willingham v. Morgan,* 395 U.S. 402, 406-07 (1969) (holding that the

"federal officer removal statute is not narrow or limited," and the policy underlying

federal officer removal "should not be frustrated by a narrow, grudging interpretation

of s 1442(a)(1)") (citations omitted); *see also, Marley v. Elliot TurboMachinery Co.,*

*Inc.,* 545 F.Supp.2d 1266, 1271 (S.D. Fla. 2008) ("All a removing defendant needs to

do is to make a showing that his federal defense 'is not without foundation and made

in good faith.'") (citation omitted).

32.

3M is a "person" under the statute. *See McMahon v. Presidential Airways, Inc.,*

410 F.Supp.2d 1189, 1195-2000 (M.D. Fla. 2006) (applying 28 U.S.C. § 1442(a)(1)

to corporate defendant); *Swanstrom v. Teledyne Continental Motors, Inc.,* 531

F.Supp.2d 1325, 1331 (S.D. Ala. 2008) (noting that "the majority of courts when

15

confronted with a case involving federal officer removal have held that a corporation is a 'person' as contemplated under the Act.") (citations omitted).

33.

A defendant must satisfy two requirements in order to remove under 28 U.S.C. § 1442(a)(1): (1) there is a colorable defense arising from federal law; and (2) there is a causal connection between actions taken under the color of office and the claim at issue. *Magnin v. Teledyne Continental Motors,* 91 F.3d 1424, 1427 (11th Cir. 1996) (citations omitted).

34.

Here, the government contractor defense is applicable to 3M's design and sale of military specification AFFF to the United States Navy for use on the Pensacola Naval Air Station and other Naval installations in Escambia County. At the Navy's request, 3M produced AFFF beginning in the 1960s, and 3M continued to manufacture military specification AFFF for the Navy until 2002, when 3M stopped production of AFFF. (*See* Ex. E, Santoro Dec. ¶¶ 5, 16.) For nearly three decades prior to 3M's decision to cease production, 3M was the *primary supplier* of military specification AFFF to the Department of Defense. (*See id.* ¶ 5.)

35.

The manufacture and supply of fire fighting foam designed to protect Naval personnel and equipment is an area of "uniquely federal interest." *See Boyle v. United Technologies, Corp.,* 487 U.S. 500, 507 (1988) (addressing claim against an

16

independent contractor that supplied military helicopter to the United States and holding that "the procurement of equipment by the United States is an area of uniquely federal interest…"); *Glassco v. Miller Equipment Co., Inc.,* 966 F.2d 641, 643 (11th Cir. 1992) ("[Defendants] manufacture of the lineman's belts for the Army was clearly a matter of 'uniquely federal' interest. Appellants do not seriously argue otherwise.")

36.

There is a significant conflict between the federal policies implicated by the purchase and use of 3M-manufactured AFFF by the U.S. military and Plaintiff's state law claims. The Supreme Court has set out a three-part test to determine whether or not there is a "significant conflict" between state law and federal policy: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle,* 487 U.S. at 512.

37.

3M's design of AFFF for use by the U.S. Navy satisfies each of these three requirements. First, the Navy created its own specification for AFFF, which set out a long list of detailed requirements that manufacturers were obligated to meet before they could sell any AFFF to the Navy. (*See* Ex. E, Santoro Dec., ¶¶ 9-12.) Among other requirements, the Navy specified:

17

-      the chemical and physical make-up of AFFF, including the requirement that AFFF contain "fluorocarbon surfactants" [PFOS] (*see* Ex. E, Santoro Dec. ¶ 10);

-      the fire performance requirements of AFFF, including maximum extinguishing time (*see id.* ¶ 10);

-      the labeling of AFFF, including the content, color, and location of the labels (*see* Ex. E, Santoro Dec., Exs. 3-5 at § 3.5 and figures 1 and 2);

-      the testing to be conducted on AFFF to discern its environmental impact, as well as acceptable results of the testing (*see* Ex. E, Santoro Dec., at Exs. 3 and 5 at § 4.7.12; Ex. 4 at § 4.7.13); and

-      the packaging of AFFF, including the type, size and color of AFFF containers (*see* Ex. E, Santoro Dec., at Exs. 3-5 at § 5).

38.

Thus, the Navy's detailed specification for AFFF, spanning twenty pages or more, (*see* Ex. E, Santoro Dec. ¶¶ 9-10; Santoro Dec. Exs. 3-5), clearly satisfies the first prong set out by the Supreme Court in *Boyle*. *See e.g., Glassco,* 966 F.2d at 643 (Applying the first prong of the three-part *Boyle* test to a lineman's belt manufactured for the U.S. Army and holding, "we readily conclude that the government specifications in the instant case were 'reasonably precise.' The specifications exceeded 11 pages in length, exclusive of detailed drawings. More particularly, however, the requirement that leather be used was precise.").

39.

18

Second, 3M's production of AFFF conformed to these detailed specifications. Indeed, unless AFFF was in compliance with the Navy's standards, it could not be purchased by the Navy. (*See* Ex. E, Santoro Dec. ¶¶ 11-12.) In order to insure that AFFF met its stringent specification, the Navy set out detailed quality assurance provisions in the specification, which mandated a wide variety of tests and inspections. (*see* Ex. E, Santoro Dec. Exs. 3-5 at § 4.) The Navy also conducted its own testing to insure that AFFF produced by 3M met the military specification. (*See* Ex. E, Santoro Dec. ¶ 11, 13.) From the 1960s until 2002, the Navy approved a number of 3M's AFFF products for Naval use. (*See id.* ¶ 12.)

40.

Third, 3M provided warnings to the Navy regarding dangers associated with the use of AFFF known to 3M. As a threshold matter, the Navy knew (and knows) as much, if not more, about the use and disposal of AFFF as 3M. In fact, the Naval Research Laboratory holds the initial patent on AFFF, and has conducted research on AFFF since the 1960s. (*See* Ex. E, Santoro Dec. ¶ 6.) Moreover, as discussed above, the Navy specified particular testing to discern AFFF's environmental impact, and also mandated particular labeling for AFFF. In addition to the Navy's required labeling, 3M developed material safety data sheets (MSDS) and product environmental data sheets (PEDS) that contained recommendations regarding disposal and handling of waste AFFF. (*See id.* ¶ 14.) Therefore, the third prong of the *Boyle* test is satisfied.

41.

19

Plaintiff's claim that AFFF is defectively designed and unreasonably dangerous, (*see* Compl. at ¶ ¶ 43-49), would therefore create a "significant conflict" between state law and the "uniquely federal" interest in insuring that the Navy had access to AFFF to protect its personnel and planes. Plaintiffs allege that 3M "owed a duty … *not to market* any product which is unreasonably dangerous for its intended and foreseeable uses." (*Id.* ¶ 46 (emphasis added).) Thus, 3M's sale of military specification AFFF to the Navy for use at the Pensacola Naval Air Station and other Naval installations in Escambia County squarely and unavoidably implicates the government contractor defense. *See Hudgens v. Bell Helicopters,* 328 F.3d 1329, 1333 (11th Cir. 2003); *see also, Marley,* 545 F. Supp.2d at 1271 ("All a removing defendant needs to do is to make a showing that his federal defense 'is not without foundation and made in good faith.'") (citation omitted).

42.

Once a defendant has shown that there is a colorable federal defense, the second step in determining whether or not federal officer removal is appropriate under 28 U.S.C. § 1442(a)(1) is demonstrating a causal connection between actions taken under an officer and the claim at issue. *Magnin,* 91 F.3d at 1427 (citations omitted); *see also Marley,* 545 F. Supp.2d at 1273 ("Although some courts treat the causal nexus and 'acting under' requirements separately, both issues tend to 'collapse into a single requirement: that the acts that form the basis for the state civil or criminal suit were performed pursuant to an officer's direct order or to comprehensive detailed regulations.'") (citations omitted).

43.

Whether a defendant's actions were under the direction of a federal officer "depends on the 'detail and specificity of the federal direction of the defendant's activities and whether the government exercises control over the defendant.'" *King v. Provident Bank,* 428 F.Supp.2d 1226, M.D. Ala. 2006) (citation omitted); *see also McMahon v. Presidential Airways, Inc.,* 410 F.Supp.2d 1189, 1196 (M.D. Fla. 2006).

44.

As discussed above, 3M's actions in designing and manufacturing AFFF for the Navy's use were pursuant to the Navy's detailed specifications. The Navy's control over the chemical and physical makeup of AFFF, its performance capabilities, its labeling, its environmental profile, its packaging, and the quality testing performed on AFFF is more than sufficient to establish that 3M was acting under the direction of a federal officer or agency. *See McMahon,* 410 F.Supp.2d at 1196-97 (holding that air transport company working under contract with the U.S. military was acting under an officer of the United States because the contract specified the crew qualifications, equipment, methods of communication, and flight routes to be used); *Marley,* 545 F.Supp.2d at 1273 (holding that defendant manufacturer of ship parts containing asbestos for the Navy was acting under federal authority based on affidavit asserting that the Navy had control over the warnings that should or should not have been included).

45.

As with the federal defense requirement, the causal nexus inquiry is limited to

whether a colorable nexus is asserted. *See Jefferson County, Alabama v. Acker,* 527

U.S. 423, 432 (1999) (internal citation omitted). A government contractor who has

established a colorable federal defense must simply show that plaintiff's claims arise

from the performance of duties under the contract with the government. *See Marley,*

545 F.Supp.2d at 1274.

46.

The instant case easily satisfies this standard, as Plaintiff's Complaint

necessarily involves 3M's design and manufacture of AFFF for the Navy's use at the

Pensacola Naval Air Station and other Naval installations in Escambia County.

Plaintiffs allege that:

> (b) airport personnel were foreseeable users of AFFF
> containing or degrading into PFOA and/or PFOS in both
> training and real-life situations; (c) PFOA and PFOS are
> dangerous to the environment and human health if allowed
> to runoff or drain into groundwater; (d) airport personnel in
> Escambia County, Florida, foreseeably lacked knowledge
> of these dangers; and, (e) airport personnel would require
> warnings of these dangers and/or affirmative instructions in
> the use of AFFF.

(Compl. at ¶ 35.)

47.

Escambia County is home to the Pensacola Naval Air Station, as well as several

outlying airfields operated by the U.S. Military. The Pensacola Naval Air Station has

22

conducted on-site firefighting training. (*See* Ex. E, Santoro Dec. ¶ 7.) Further, the
Navy cooperates with other military and civilian personnel for firefighting training.
(*See id.* ¶ 8.) One such training exercise was recently conducted at the Pensacola
airport and involved the use of AFFF supplied by the Navy in controlling a simulated
passenger plane fire. (*See id.*) Thus, Plaintiff's broad allegations regarding the use of
AFFF by "airport personnel" in Escambia County necessarily encompass the
personnel on the Pensacola Naval Air Station and outlying airfields and the Navy's
uniquely federal interest in utilizing military specification AFFF.

48.

Therefore, because 3M has a colorable federal defense (the government
contractor defense) and Plaintiff's claims are in direct conflict with 3M's design and
manufacture of AFFF under the direction of the Navy, federal officer removal is
appropriate under 28 U.S.C. § 1442(a)(1).

## CONCLUSION

For the foregoing reasons, this Court has jurisdiction over this action and this
action is properly removed to the Northern District of Florida pursuant to 28 U.S.C.
§§ 1331, 1332, and 1446.

This 21st day of August, 2009.

Respectfully submitted,

23

Charles F. Beall, Jr. (FL Bar # 66494)
George R. Mead (FL Bar # 096490)
Moore, Hill & Westmoreland, P.A.
220 West Garden Street, 9th Floor
Pensacola, FL 32502-5702
Tel: 850/434-3541
Fax: 850/435-7899
Counsel for Defendant, 3M Company

Of Counsel

Harlan I. Prater, IV
William H. Brooks
Lightfoot, Franklin & White LLC
The Clark Building
400 20th Street North
Birmingham, Alabama 35203-3200
(205) 581-0700

Katherine L. Rhyne
Cynthia A.M. Stroman
King & Spalding LLP
1700 Pennsylvania Avenue NW
Washington, D.C. 20006-4706
(202) 737-0500

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2009, I served a copy of the foregoing **NOTICE OF REMOVAL** by depositing a copy of the same in U.S. Mail, first-class, postage prepaid, and addressed as follows:

James M. Corrigan (FL Bar No. 161252)
James Martin Corrigan, P.A.
700 South Palafox Street, Suite 220
Pensacola, Florida 32502

Scott Summy
Baron & Budd, P.C.
3102 Oak Lawn Avenue, Suite 1100
Dallas, Texas 75219

**Attorneys for Plaintiff**

WDC_IMANAGE-1278263.1